**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | |
|---|---|
| ALLAN W. ROPER ) | |
|        Plaintiff, ) | |
| ) | |
|    v. ) | CAUSE NO.: 2:07-CV-247-PRC |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security ) | |
| Administration, ) | |
|        Defendant. ) | |

**OPINION AND ORDER**

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Allan W. Roper on July 31, 2007, and a Social Security Opening Brief [DE 13], filed by Plaintiff on November 20, 2007. Plaintiff requests that the decision of the Administrative Law Judge, dated March 14, 2007, be remanded and reversed for the denial of Disability Insurance Benefits ("DIB") for the period of December 8, 2001, through June 13, 2005. For the following reasons, the Court denies Plaintiff's request and affirms the decision of the Administrative Law Judge for reasons consistent with this Order.

**PROCEDURAL BACKGROUND**

On December 3, 2003, Plaintiff filed an application for DIB, alleging disability due to gastroesophaegeal reflux disease ("GERD"), glaucoma, cysts on his feet, prostatitis, hypertension, arthritis, and depression. Plaintiff's application was initially denied and also upon reconsideration. Plaintiff did not seek further review, and there is no evidence in the record that he sought to reopen this prior application.[1]

---

[1] In his brief, Plaintiff claims that he filled out an application for social security benefits in December 2004. There is no evidence in the record of an application in December 2004.

On February 14, 2005, Plaintiff filed another application for DIB based on the same ailments, alleging he became disabled on December 8, 2001. The state agency initially denied the claim. However, the claim was approved on July 18, 2005, upon reconsideration by the agency, with a disability onset date of June 14, 2005. Plaintiff filed a timely request for a hearing to appeal the decision of the state agency, claiming he was disabled prior to the date of June 14, 2005. Plaintiff appeared *pro se* at a hearing on February 26, 2007, before Administrative Law Judge John E. Meyer ("ALJ"). Additionally, two medical experts, Dr. Peter Gutierrez and Dr. Larry Kravitz, attended the hearing. Vocation Expert ("VE") Leonard Fisher also testified at the hearing. In a decision dated March 14, 2007, the ALJ denied Plaintiff's application for SSI for the time period between December 8, 2001, and June 13, 2005, finding that Plaintiff did not have a disability within the meaning of the Social Security Act. The ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2007.

2. The claimant has not engaged in substantial gainful activity since December 8, 2001, the alleged onset date (20 CFR 404.1520(b) and 404.1571 *et seq.*).

3. The claimant has the following medically determinable impairments prior to June 14, 2005: glaucoma, prostatitis; gastroesophageal reflux disease (GERD); hypertension; a history of nonmalignant cysts on his feet; and depression (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that has significantly limited (or is expected to significantly limit) the ability to perform basic work-related activities for 12 consecutive months; therefore, the claimant does not have a severe impairment or combination of impairments (20 CFR 404.1521).

5. The claimant was not under a disability, as defined in the Social Security Act, during the period December 8, 2001 through June 13, 2005.

R. at 12, 16.

Plaintiff filed a timely Request for Review with the Social Security Administration Appeals Council. The Appeals Council denied Plaintiff's request for review on May 31, 2007, making the ALJ's decision the final decision of the Commissioner.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Thus, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636 and 42 U.S.C. § 405(g).

## FACTS

### A. Background

Plaintiff, born in 1948, was fifty-three through fifty-six years old during the period in which the ALJ found he was not disabled. Plaintiff reported a ninth-grade education and previously worked in the steel industry as a high pressure boiler engineer. Plaintiff alleged in his application that he was unable to work during the relevant time period due to GERD, poor eyesight, malignant growths on his feet, prostatitis, hypertension, arthritis, depression and "nerves."

### B. Medical Evidence

In a February 2003 report documenting Plaintiff's medical treatment, Dr. David D. Chube reported that he began seeing Plaintiff in January 2002 and diagnosed him with GERD, prostatitis, hypertension, and a nervous disorder along with depression. Between January 2002 through October 2002, Plaintiff saw Dr. Chube approximately every two weeks. Dr. Chube indicated Plaintiff's condition improved with medications, and in September 2002, he discharged Plaintiff in satisfactory condition to return to work.[2] Plaintiff returned to Dr. Chube in February 2003 to obtain a medical

---

[2] This period of time is less than a year and, therefore, does not comport with the requirements of the Act that the impairment last for at least twelve months. *See* 42 U.S.C. § 423(d)(1)(A).

3

report and again in March 2004 for disability forms.  It appears that Dr. Chube treated Plaintiff in April 2004.  In May 2004, Plaintiff obtained records for his disability claim.  The record does not contain any other medical records for the years 2002-2003.

In January 2004, Dr. Karr performed a psychological evaluation of Plaintiff.  His diagnosis, after an interview and examination, was multiple somatic concerns.  Specifically, Dr. Karr noted that Plaintiff was kempt in appearance, cheerful, and coherent and that Plaintiff did not exhibit visible signs of discomfort.  Furthermore Plaintiff gave no indication of dysphoria, other bizarre behaviors, or any related treatment history and presented in an unremarkable manner.

Later, in February 2004, Dr. Kladder, a state agency psychologist, reviewed the record evidence and concluded that Plaintiff did not have a medically determinable mental impairment.  Another state agency psychologist, Dr. Gange, affirmed Dr. Kladder's assessment upon review of the evidence of record in September 2004.

In February 2004, Dr. Bautista performed a physical consultive evaluation of Plaintiff.  Plaintiff had a normal gait and was able to do tandem gait slowly.  Additionally, Plaintiff was able to perform heel and toe walking and to squat slightly and briefly.  Dr. Bautista's neurological examination of Plaintiff revealed full muscle strength and tone in both the upper and lower extremities, and there was no evidence of tremor or atrophy.  Furthermore, Plaintiff had no muscle spasm in the lumosacral spine area, and superficial and deep reflexes were intact.  Plaintiff had good sensation in both upper and lower extremities, and good grip strength in both hands.  Dr. Bautista diagnosed GERD, a visual impairment affecting both eyes, status post excision of bilateral plantar tumor in 1995 with recurrent left plantar tumor in the left foot involving the middle third of the first metatarsal area, history of prostatitis, hypertension, depressive disorder, arthritis of the left hand and arthralgia of both shoulders.

4

In September 2004, Dr. Whitley, a state agency physician, reviewed the record evidence and concluded that Plaintiff's physical impairments were not severe.

As for Plaintiff's most recent physical history, Dr. Budzenski performed a consultative examination in May 2005 and diagnosed Plaintiff with a history of alcohol abuse, not in remission; history of blackouts associated with alcohol abuse; poorly controlled hypertension; decreased visual acuity with twenty-year-old glasses; decreased visual acuity in the left eye, apparently secondary to a cataract; history of depression; tobacco abuse, non-compliant with cessation recommendations; symptoms of prostatitis, apparently resolved with medication; and a history of foot cysts and removals. Dr. Budzenski opined that Plaintiff should be limited to standing six hours a day and ambulating four hours per day. He further opined that Plaintiff should not operate automotive equipment or dangerous machinery given his continued alcohol use and possible return to abuse levels. Finally, Dr. Budzenski indicated Plaintiff should not climb ladders, ropes, or scaffolds or work around unprotected heights. Dr. Budzenski concluded, however, that Plaintiff could perform at least medium work for eight hours per day.

In June 2005, Dr. Sands, a state agency physician, reviewed the record evidence and concluded that Plaintiff did not have a severe physical impairment.

Likewise, at the hearing, Dr. Gutierrez testified that Plaintiff had glaucoma, gastric reflux, prostatitis, increased blood pressure, depression, and affective disorder but that none of these impairments, alone or in combination, were considered severe.

As for his most recent mental condition, on June 14, 2005, Dr. Brown performed a psychological evaluation of Plaintiff. After an interview and examination, he diagnosed Plaintiff with a cognitive disorder, depressive disorder, and anxiety disorder. Dr. Brown reported that

Plaintiff's prognosis was guarded, given that much of his emotional and psychiatric problems were embedded and associated with medical difficulties.

In July 2005, Dr. Neville, a state agency psychologist, reviewed the record evidence and concluded that Plaintiff did not retain the capacity to carry out simple, repetitive tasks in a competitive setting.

Finally, Dr. Kravitz, a psychologist, who reviewed the record evidence and testified as a medical expert at the administrative hearing, concluded that Plaintiff had non-severe mental impairments as of 2001.

### C.  Plaintiff's Hearing

On February 26, 2007, Administrative Law Judge John E. Meyer ("ALJ") convened a hearing at which Plaintiff, medical experts Dr. Peter Gutierrez and Dr. Larry Kravitz, and vocational expert "VE" Leonard Fisher testified.  Plaintiff testified that he became sick on December 8, 2001, with dizziness, rectal bleeding, and nausea.  He took sick leave from his job of 36 years at the steel mill, and while he was gone, the mill closed permanently.  However, Plaintiff indicated that he would not have returned to work due to his sickness whether or not the mill had continued operating.  Plaintiff testified that he has not had employment earnings since December 8, 2001.

At this point in the hearing, the ALJ asked Plaintiff specific questions about his ailments beginning in 2001.  First, Plaintiff described his prostate treatment.  He stated that this condition is recurrent and causes pressure and rectal bleeding.  Second, Plaintiff stated that he "had blood pressure and then I got glaucoma real bad."  R. at 219.  Third, Plaintiff discussed the "cancer in my feet that I need operation on now. . . . I've had four of five operations on my feet, but it hasn't came back in my right foot, but it came back in my left foot."  *Id*.  At this point, Dr. Gutierrez noted that the Plaintiff's foot cysts were not malignant according to the medical records.  Plaintiff then testified

6

that a Dr. Farrell, now retired, told him they were cancerous.  Lastly, the ALJ asked Plaintiff about

any other physical or mental problems he had back in 2001, and Plaintiff stated that "I always had

mental problems" manifested in his behavior as worrying, crying, and being emotional.

 When asked if he had been hospitalized any time between 2001 and 2005, Plaintiff

responded that he had not and that he did not have any insurance that would cover a hospital stay.

As for medications, Plaintiff testified that Dr. Chube put him on high blood pressure medication and

that Dr. Chube would give him three or four shots of unknown medications every Tuesday.  Plaintiff

also testified that he smokes a pack of cigarettes a day.

As to his daily activities, Plaintiff stated that he can cook simple meals, wash dishes, iron,

vacuum, and do light loads of laundry.  He testified that he gets dizzy if he stands up too long.  A

neighbor mows his grass and helps him with some of the household chores.  He testified that he

cannot grocery shop because he has to stand up too long and that he cannot roll the garbage bin to

the sidewalk.  Primarily Plaintiff spends his time watching television and occasionally reads,

although the record indicates he was able to go to the bar with friends as well.  Plaintiff testified that

he can lift ten pounds, cannot stand more than five minutes without losing his breath, could walk

for only five minutes, and could sit for indefinite periods of time.  He testified that he does not have

trouble pushing pedals with his feet or pushing and pulling with his arms, that he gets dizzy and out

of breath when he climbs the stairs in his home, and that he can kneel and crawl.  As for his

eyesight,  he testified that he cannot see with his left eye without a magnifying glass.

Dr. Gutierrez testified that Plaintiff did not meet any of the required listings based on

Plaintiff's testimony.  He stated that his interpretation of Plaintiff's medical records were that

Plaintiff's blood pressure was under control through treatment and that he "was placed on psych

disability as of the 14th of June of '05. . . . But he has no physical impairments that meet or equal a listing."  R. at 232.

Next, Dr. Kravitz testified that Plaintiff has been treated with psychotropic medication since 2002, with both an anti-depressant and anti-anxiety drug.  However, he also noted Plaintiff's "mental functioning is fairly intact.  No indication of dysphoria, in fact no psych diagnosis was given."  R. at 235.  Dr. Kravitz concluded that the Plaintiff's mental impairment is non-severe, going back to 2001, based on the medical records and Plaintiff's testimony.

Finally, the VE concluded, based on Plaintiff's descriptions of his duties, that his prior employment was as a boiler room helper, which is semi-skilled, and that Plaintiff was unable to perform his past relevant work based on his physical impairments.  However, the VE testified that Plaintiff may have had the residual functioning capacity ("RFC") to perform work at the sedentary or light levels during the period in question.

### D.  ALJ's Decision

The ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act from December 8, 2001, through June 14, 2005.  However, the ALJ did not disturb the reconsidered determination by the Social Security Administration Appeals Council, dated July 18, 2005, finding Plaintiff disabled as of June 14, 2005.

Considering the evidence, the ALJ conducted the five-step analysis set forth at 20 CFR § 404.1520.  The ALJ found that Plaintiff has not engaged in substantial gainful activity since December 8, 2001, the alleged onset date, and that Plaintiff has the following medically determinable impairments prior to June 14, 2005:  glaucoma; prostatitis; GERD; hypertension; a history of non-malignant cysts on his feet; and depression.  However, the ALJ determined that the objective medical evidence and testimony of the medical experts did not establish that Plaintiff's

impairment or combination of impairments significantly limited his ability to perform basic work related activities for twelve consecutive months.

The ALJ based his findings on the consistency of the objective medical evidence compared with other various factors.  Some of these factors include: the Plaintiff's daily activities; factors that precipitate and aggravate the symptoms; medication; treatment; other measures the Plaintiff has used to relieve pain or symptoms; and any other factors concerning the Plaintiff's functional limitations and restrictions due to his ailments.  Upon weighing the objective medical evidence with the Plaintiff's testimony regarding his pain and symptoms, the ALJ did not find him especially credible when depicting his limitations prior to June 14, 2005.  The ALJ took into account Plaintiff's inability to recall the names of his medications and his lifestyle choices contributing to his medical condition, including his refusal to quit smoking, lose weight, and reduce sodium in his diet.  Furthermore, the ALJ noted that the medical record indicates new glasses and cataract surgery could likely lead to improved vision.  The ALJ noted that no medical limitation was observed impairing the Plaintiff's ability to stand or walk and that Plaintiff retains the ability to lift and carry without restriction.

Finally, the ALJ found there was no direct evidence of a medically determinable mental impairment until the psychological consultative evaluation by Dr. J. Theodore Brown, Jr. on June 14, 2005.  The ALJ concluded that these findings were consistent with the earlier state agency determinations in assessing disability.

## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Thus, a court reviewing the findings of an ALJ will only reverse if the findings are not supported by substantial evidence or if the ALJ has applied an

erroneous legal standard. *See Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford*, 227 F.3d at 869; *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ's findings are supported by substantial evidence and under the correct legal standard. *See Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003); *Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000). If an error of law is committed by the Commissioner, then the "court must reverse the decision regardless of the volume of evidence supporting the factual findings." *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997).

An ALJ must articulate, at a minimum, his analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). The ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001). The ALJ must build an "accurate and logical bridge from the evidence to her conclusion so that , as a reviewing court, we may assess the validity of the agency's ultimate findings and afford a claimant meaningful judicial review." *Young v. Barnhart*,

362 F.3d 995, 1002 (7th Cir. 2004) (quoting *Scott*, 297 F.3d at 595); *see also Hickman v. Apfel*, 187

F.3d 683, 689 (7th Cir. 1999) (citing *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)).

## DISABILITY STANDARD

To be eligible for disability benefits, a claimant must establish that he suffers from a

"disability" as defined by the Social Security Act and regulations.  The Act defines "disability" as

an inability to engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment that can be expected to result in death or that has lasted or can be

expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 423 (d)(1)(A).

To be found disabled, the claimant's impairment must not only prevent him from doing his previous

work, but considering his age, education, and work experience, it must also prevent him from

engaging in any other type of substantial gainful activity that exists in significant numbers in the

economy.  42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(e), (f).

When a claimant alleges a disability, Social Security regulations provide a five-step inquiry

to evaluate whether the claimant is entitled to benefits.  20 C.F.R. § 404.1520(a)(4).  The steps are:

(1) Is the claimant engaged in substantial gainful activity?  If yes, the claimant is not

disabled, and the claim is denied; if no, the inquiry proceeds to Step 2.

(2) Does the claimant have an impairment or combination of impairments that are severe?

If not, the claimant is not disabled, and the claim is denied; if yes, the inquiry proceeds to Step 3.

(3) Does the impairment(s) meet or equal a listed impairment in the appendix to the

regulations?  If yes, the claimant is automatically considered disabled; if not, then the inquiry

proceeds to Step 4.

(4) Can the claimant do the claimant's past relevant work?  If yes, the claimant is not

disabled, and the claim is denied; if no, then the inquiry proceeds to Step 5.

(5) Can the claimant perform other work given the claimant's residual functional capacity, age, education, and experience?  If yes, then the claimant is not disabled, and the claim is denied; if no, the claimant is disabled.  20 C.F.R. §§ 404.1520(a)(4)(i)-(iv); *see also Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).

At the fourth and fifth steps, the ALJ must consider an assessment of the claimant's RFC. "The RFC is an assessment of what work-related activities the claimant can perform despite her limitations." *Young*, 362 F.3d at 1000.  The ALJ must assess the RFC based on all relevant evidence of record. *Id.* at 1001 (citing 20 C.F.R. § 404.1545(a)(1)).  The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ.  *Id.* at 1000; *see also Zurawski*, 245 F.3d at 886; *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

## ANALYSIS

Construing Plaintiff's *pro se* brief, the Court finds that Plaintiff makes three arguments for reversal or remand of the ALJ's decision:  (a)  he should have received "retroactive pay" for the time period of June 14, 2005, through December 14, 2005; (b) the Social Security Administration improperly handled his claim; and (c) the ALJ incorrectly determined that Plaintiff was not disabled prior to June 14, 2005, in part because Plaintiff could not afford to see his doctor during this period.

### A.  Plaintiff's Entitlement to Benefits

As an initial matter, Plaintiff argues that, because the SSA found that his disability onset date was June 14, 2005, he should receive disability benefits from that date forward rather than beginning in December 2005.  The regulations controlling disability benefits prescribe a five-month waiting period from the onset of disability before the disability benefits will be paid.  *See* 42 U.S.C. §§ 423(a)(1)(E), 423(c)(2); 20 C.F.R. §§ 404.315, 404.316(a), 404.320(b)(4).  Therefore, Plaintiff is

entitled to benefits beginning on December 14, 2005, five months after the state agency's determination of his disability. Accordingly, he was correctly paid the amount of $1,773.00 for December 2005 (on January 25, 2006) and is not entitled to the "retroactive backpay" that he seeks for the months of June to December.

### B.  The Social Security Administration's Handling of Plaintiff's Claim

In the closing sentence of his brief, Plaintiff asserts that he was "treated wrong" by the Social Security Administration in the handling of his claim. Pl. Br. at 2. Plaintiff specifically alleges, "By asking for more information about me over and over that was [sic] same information, they prolong [sic] filing my claim, because I would have [sic] start all over again." *Id*. Courts should not interfere in administrative agency delays unless a clear due process violation exists, the delay is against congressional intent, or the action for a particular case takes a disproportionate amount of time compared to an average case. *Wright v. Califano*, 587 F.2d 345, 353 (7th Cir. 1978); *see also Heckler v. Day*, 467 U.S. 104, 119 (1984). Because Plaintiff does not allege violations of due process or congressional intent and does not provide evidence that his case was unduly delayed in comparison to other Social Security Administration cases, Plaintiff has not met his burden of demonstrating delay on the part of the Social Security Administration.

To the extent Plaintiff feels he was mistreated because his claim for benefits from December 8, 2001, through June 13, 2005, was denied, the Court addresses whether the ALJ's decision is supported by substantial evidence in Part C below.

### C.  The ALJ's Determination

In his disability application, Plaintiff alleged that he had been disabled since December 8, 2001. The state agency determined that he was disabled due to organic mental disorders and an

affective disorder as of June 14, 2005.  Thus, in his appeal to the ALJ, Plaintiff sought disability benefits for the period of December 8, 2001, through June 13, 2005, which were denied.  As set forth below, the Court finds that the ALJ's determination that Plaintiff was not disabled during this period is supported by substantial evidence based on Plaintiff's reported medical history, Plaintiff's testimony, the testimony of the medical experts, and the ALJ's credibility finding.

*1.  Credibility determination and the inability to afford medical care*

An ALJ's credibility finding is entitled to "considerable deference" by a reviewing court and will not be overturned unless the claimant can show that the finding is "patently wrong." *Proschaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (citing *Carradine v Barnhart*, 360 F.3d 751, 758 (7th Cir. 2004)); *see also Sims v. Barnhart*, 442 F.3d 536, 538 (7th Cir. 2006).  Although an ALJ cannot merely ignore claims of pain if they are supported by medical findings or signs, *see Zurawski*, 245 F.3d at 887-88, an ALJ is not required to give full credit to every statement of pain made by the claimant, or to find that a disability exists, each time a claimant states that he or she is unable to work, *see Rucker v. Chater*, 92 F.3d 492, 496 (7th Cir. 1996).  In addition, an ALJ may find a claimant's symptoms not credible even when a medically determinable impairment exists that could reasonably be expected to produce the complained-of symptoms.  *See Scheck v. Barnhart*, 357 F.3d 697, 701-03 (7th Cir. 2004).  Nonetheless, a claimant's statements regarding the intensity or persistence of his symptoms "may not be disregarded solely because they are not substantiated by objective medical evidence."  SSR 96-7p at *6.

When assessing a claimant's credibility, an ALJ considers the following factors:

(i)     The individual's daily activities;
(ii)    The location, duration, frequency, and intensity of the individual's pain or other symptoms;
(iii)   Factors that precipitate and aggravate symptoms;

      (iv)     The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;

      (v)     Treatment, other than medication, the individual received or has received for relief of pain or other symptoms;

      (vi)     Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (*e.g.*, lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

      (vii)     Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

SSR 96-7p at *3; *see also* 20 C.F.R. § 404.1529(c)(3).

On appeal from the ALJ's decision, Plaintiff asserts in his brief that he was told that the reason he was denied benefits prior to June 14, 2005, was because he did not have sufficient doctor's visits. Pl. Br. at 1. Plaintiff explains in his brief that he did not continue to see Dr. Chube "a few months into 2004" because he could not afford to pay for treatment. *Id.* In his decision, the ALJ found Plaintiff not "especially credible" concerning his limitations prior to June 14, 2005. R. at 14. In reviewing the ALJ's credibility determination under the standard articulated above, the Court considers whether Plaintiff's statement that he could not afford to see his physician, Dr. Chube, subsequent to the early months of 2004 was a factor determinative of the ALJ's decision such that it was patently wrong.

To deny a claimant benefits based on a failure to follow prescribed treatments depends on whether that treatment would have eliminated the disability and whether he has a sufficient excuse. 20 C.F.R. § 404.1530(a); *Luna v. Shalala*, 22 F.3d 687, 691 (7th Cir. 1994). Many circuits have upheld the inability to afford medications or regular doctors visits as a valid excuse for failing to follow a prescribed course of treatment. *See Buchholtz v. Barnhart*, 98 Fed. Appx. 540, 546-47 (7th Cir. 2004) (citing SR 96-7p at 8; *Newell v. Comm'r of Soc. Security*, 347 F.3d 541, 547 (3d Cir. 2003); *Shaw v. Chater*, 221 F.3d 126, 133 (2d Cir. 2000); *Gamble v. Chater*, 68 F.3d 319, 321 (9th

15

Cir. 1995)).  However, an "absence of evidence that a claimant sought low-cost or free care may warrant discrediting his excuse that he could not afford treatment." *Buchholtz*, 98 Fed. Appx. at 546 (citing *Osborne v. Barnhart*, 316 F.3d 809, 812 (8th Cir. 2003)).

In this case, the ALJ did not base his credibility decision on the absence of medical treatment, but rather, when comparing the medical evidence of record to Plaintiff's testimony, the ALJ found Plaintiff not fully credible.  Nor is this a case in which the ALJ discounted Plaintiff's credibility because he failed to follow prescribed treatment due to a lack of funds.  First, there is no evidence that Plaintiff failed to follow any course of treatment other than cessation of smoking, increasing exercise, and decreasing his salt intake.  Moreover, there is no hearing testimony that Plaintiff did not continue to be treated by Dr. Chube because he could not afford it.  Although Plaintiff told the ALJ that he did not have the funds for hospitalization when asked if he had been hospitalized during the relevant time period, there is no indication that Plaintiff needed to be hospitalized or would have otherwise been hospitalized had he had insurance.

The Court now turns to the medical evidence of record.  Dr. Chube was a physician who began treating Plaintiff in January 2002.  He diagnosed Plaintiff with GERD, prostatitis, hypertension, and a nervous disorder along with depression.  Initially, Plaintiff was prescribed a sedative, including Tylenol #3, an antidepressant, Tigan, Nexium, and Vicodin.  Dr. Chube indicated that Plaintiff's physical condition improved with the medication, and Plaintiff continued to be prescribed Nexium, Vicodin, and an antidepressant.  Although Plaintiff showed improvement in his physical condition, he continued to show signs of depression into August 2002.  However, by September 2002, Dr. Chube noted that Plaintiff was asymptomatic and discharged Plaintiff in satisfactory condition to return to work.

Subsequent to his treatment by Dr. Chube, Dr. Karr and Dr. Bautista conducted consultative mental and physical examinations, respectively, of Plaintiff in 2004.  Additionally, Dr. Kladder, Dr. Gange, and Dr. Whitley reviewed Plaintiff's medical records in 2004 and affirmed that Plaintiff's diagnosis did not rise to the level of a disability.  In 2005, Dr. Budzenski performed a consultative examination during which he determined that Plaintiff could perform medium work for eight hours per day.  Dr. Brown also examined Plaintiff in June 2005 and determined that Plaintiff's emotional and psychiatric problems were related to his medical difficulties and that, therefore, his prognosis was dependent on a resolution of Plaintiff's physical and mental problems.  Finally, in July 2005, Dr. Neville reviewed Plaintiff's record evidence and determined that Plaintiff was unable to retain the capacity to carry out simple repetitive tasks in a competitive setting.

At the hearing on February 26, 2007, the ALJ asked the medical expert, Dr. Gutierrez, to present his impressions of the Plaintiff's ability to function.  In response to Plaintiff's assertion that he experienced rectal bleeding, Dr. Gutierrez indicated this symptom was inconsistent with the diagnosis of prostatitis.  Dr. Gutierrez also testified that the growths on Plaintiff's feet were not cancerous as claimed by Plaintiff.  Furthermore, Dr. Gutierrez testified that a review of Plaintiff's medical records indicates that Plaintiff did not have a physical impairment that would meet or equal a listing in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526).

Based on the hearing testimony and the objective medical evidence in the record, the ALJ did not fail in his duty to determine Plaintiff was not entirely credible.  The ALJ found that Plaintiff's "medically determinable impairments cannot reasonably be expected to produce symptoms of the intensity, persistence and magnitude described at the hearing."  R. at 14.  This

17

determination was based in part on the contradictory testimony of Plaintiff and Dr. Gutierrez at the hearing.  As for his high blood pressure, the ALJ examined the evidence of record and found that, despite not following his doctor's advice regarding cessation of smoking, weight loss, and eliminating excessive sodium from his diet, Plaintiff's blood pressure at the time of examination was not dangerously high and his cardiovascular examination was unremarkable.  As for his claimed physical limitations, the ALJ reviewed the results of Dr. Budzenski's physical examination, which included good grip strength; an independent, steady, non-lurching, and predictable gait; a stable station; an ability to walk on toes and heels, tandem walk, and perform a full squat maneuver without difficulty; and no crepitus, effusion, laxity, or swelling in the feet or ankles.  Regarding Plaintiff's claim of mental problems based on depression, the ALJ relied on Dr. Brown's examination of Plaintiff, during which Plaintiff denied any depressive symptoms.

Of all the medical opinions considered by the ALJ in his determination, only one examining and one non-examining physician found Plaintiff disabled based on a mental disability in July 2005. In contrast, Dr. Kravitz, who testified at the hearing, questioned the degree of limitations that were found in the mental residual functional capacity assessment dated July 13, 2005.  Although the ALJ did not discuss Dr. Chube's treatment of Plaintiff at length, Dr. Chube's release of Plaintiff to work in September 2002 supports the ALJ's credibility finding.

Despite the fact that Plaintiff now states that he was unable to continue seeing Dr. Chube in 2004 due to financial difficulties, this factor does not appear in the ALJ's credibility determination. The Court finds that the ALJ's credibility determination is supported by substantial evidence in the record and is not patently wrong.

*2. Substantial evidence supports the ALJ's findings*

In his brief, Plaintiff's statement that he feels he was "treated wrong" by the Social Security Administration leads the Court to consider whether the ALJ's decision is supported by substantial evidence. At step two of the sequential analysis for a claim of disability, the ALJ found that, although Plaintiff had GERD, hypertension, a history of nonmalignant cysts on his feet, and depression prior to June 14, 2005, these physical and mental impairments were not severe during that time period and thus found him not disabled. 20 C.F.R. § 404.1520(c). An impairment is considered severe if it significantly limits an individual's physical or mental ability to do basic work activities. *See* 20 C.F.R. § 404.1521(a); *see also* SSR 96-3. An impairment that is "not severe" must have not more than a minimal effect on the ability to do basic work activities. *See* SSR 96-3p. "Basic work activities" are defined as:

> [T]he abilities and aptitudes necessary to do most jobs. Examples of these include–
> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
> (2) Capacities for seeing, hearing, and speaking;
> (3) Understanding, carrying out, and remembering simple instructions;
> (4) Use of judgment;
> (5) Responding appropriately to supervision, co-workers and usual work situations; and
> (6) Dealing with changes in a routine work setting.

20 C.F.R. § 404.1521(b).

In reaching the decision that Plaintiff's impairments were not severe for the period in question, the ALJ considered the objective medical evidence of record and the testimony at the hearing. First, the ALJ found that Plaintiff's hypertension was not severe because Plaintiff could not remember the names of his medications for his hypertension; despite his failure to make lifestyle changes to improve this condition, Plaintiff's blood pressure reading was not dangerously high; and

19

Plaintiff had an unremarkable cardiovascular examination.  Therefore, the ALJ found that Plaintiff's high blood pressure did not impair his ability to work.

Similarly, the ALJ determined that Plaintiff's visual acuity could be improved with new glasses and cataract removal.  Plaintiff wore twenty-year-old glasses and had cataracts in both eyes. Therefore, Plaintiff's vision limitations did not rise to the level of a disability preventing him from working.

In regard to Plaintiff's acid reflux and history of prostate inflamation, the ALJ determined these conditions were "non-severe."  The ALJ based his finding on Plaintiff's reported improvement of symptoms with medication and the absence of any indication of these conditions during his May 2005 consultative examination with Dr. Budzenski.

As to his residual functional capacity, the ALJ also found nothing in the medical evidence that would limit Plaintiff's ability to stand and walk or to lift and carry with restrictions.  Although the Plaintiff reported cancerous cysts on his feet, this testimony was not corroborated in the record of evidence, as pointed out by Dr. Gutierrez at the hearing.   Furthermore, Dr. Budzenski's examination found only mild tenderness to palpation in the cyst areas and noted Plaintiff's independent, steady, non-lurching, and predictable gait.  Other maneuvers Plaintiff performed were walking on his heels, tandem walk, and performance of a full squat without difficulty.  Although Dr. Budzenski noted there was a slightly limited dorsiflexion on the left side, this abnormality did not appear to substantially limit the Plaintiff.   Given that there were no objective medical findings supporting a limitation on walking or standing, the ALJ could reasonably discount Dr. Budzenski's belief that Plaintiff should be limited to standing six hours a day and ambulating four hours per day.

While there was no physical impairment preventing Plaintiff from working, the ALJ found that there was also no direct evidence of a mental impairment prior to Dr. Brown's July 2005 finding of a June 14, 2005 onset of mental impairment.  The ALJ noted that the prior evaluation by Dr. Karr produced no Axis I, II, or V diagnoses or impressions and that, during his examination with Dr. Karr, Plaintiff denied that he had any psychiatric treatment history and disavowed any depressive symptoms.  Acknowledging that Plaintiff reported taking an unidentified antidepressant prescribed by Dr. Chube, the ALJ accepted Dr. Kravitz's hearing testimony that Plaintiff's depressive disorder was not "severe" until at least June 14, 2005, which is the onset date determined by Dr. Brown.  Pursuant to 20 C.F.R. § 404.1520a, the ALJ found that Plaintiff was only mildly limited in activities of daily living, social functioning, and concentration, persistence, or pace prior to June 14, 2005, and had not experienced an episode of decompensation of any duration.  As a result, the ALJ found Plaintiff's depression was "non-severe" during the period of December 8, 2001, through June 13, 2005, and that this depression did not interfere with Plaintiff's ability to work during this time.

In addition to the evidence specifically relied on by the ALJ, the treatment records of Dr. Chube further support the ALJ's finding of non-severe limitations.  At the conclusion of frequent visits from January 2002 through October 2002, Dr. Chube reported that Plaintiff's condition generally improved with medications to the point at which Plaintiff became asymptomatic and was discharged in satisfactory condition to return to work.

Therefore, the Court finds that the ALJ's determination that Plaintiff did not suffer from a physical or mental disability during the relevant time period is based on substantial evidence of record as supported in both Plaintiff's medical records and the hearing testimony.  As a result, the Court will not disturb the ALJ's determination and denies Plaintiff's request for remand.

**CONCLUSION**

For the foregoing reasons, the Court **DENIES** the Plaintiff's Social Security Opening Brief

[DE 13].

SO ORDERED this 1st day of May, 2008.


s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT

cc:     All counsel of record